**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 07-cv-00968-REB-CBS
(Consolidated with Civil Action Nos. 07-cv-00971-REB-CBS, 07-cv-01087-REB-CBS,
08-cv-02298-REB-CBS, 08-cv-02437-REB-CBS, 09-cv-00835-REB-CBS, and 09-cv-
01145-REB-CBS)

TRUDIE M. ISKOWITZ, et al.,

   Plaintiffs,

v.

CESSNA AIRCRAFT COMPANY, et al.,

   Defendants.

---

**ORDER GRANTING MOTIONS FOR
DETERMINATION OF APPLICABLE STATE LAW**

---

**Blackburn, J.**

   This matter is before me on the following motions: 1) **Defendant Cessna**

**Aircraft Company's Motion for Determination of State Law Applicable To Claims**

**Against Cessna** [#142][1] filed December 31, 2009; and 2) **Motion of Defendants**

**Martinair, Inc. and Circuit City Stores, Inc. for Determination of State Law**

**Applicable To Claims Against Martinair, Inc. and Circuit City Stores, Inc.** [#162]

filed February 12, 2010.  The relevant parties filed responses [#s 156, 158, 165, 166,

172] and replies [#s 165, 176].  I grant both motions on the terms stated in this order.

**I.  JURISDICTION**

   I have diversity jurisdiction over this case under 28 U.S.C. § 1332.

---

[1]  "[#142]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## II.  FACTS

These consolidated cases arise from the crash of a Cessna Citation 560 jet aircraft near Pueblo, Colorado.  The airplane was owned by defendant Circuit City Stores, Inc.  At the time of the crash, the airplane was piloted by two pilots who were employees of defendant Martinair, Inc.  Circuit City had an agreement with Martinair in which Martainair agreed to operate and maintain the airplane for Circuit City. Two crew members and six passengers were killed in the crash.  In these consolidated cases, surviving family members of individuals killed in the crash assert claims against the defendants.  In its motion [#142], defendant Cessna Aircraft Company seeks a determination that Kansas law applies to the claims asserted against Cessna by plaintiffs Trudie Iskowitz, Patricia Coffman, and Nina Winston, at least to the extent non-economic damages are at issue in those claims.  In this order, I often will refer collectively to Iskowitz, Coffman, and Winston as the plaintiffs. In their motion [#162], defendants Martinair, Inc., and Circuit City Stores, Inc., seek a determination that Colorado law applies to the claims asserted against Martinair and Circuit City by the plaintiffs.

Notably, there are two additional plaintiffs in this consolidated case, Catherine Walton and Jean Wightman.  No party has sought a determination that any law other than Colorado law is applicable to Wightman and Walton's claims.  Some plaintiffs assert claims against the United States of America, alleging that the negligence of air traffic controllers, employees of the United States,  was a cause of the crash.  No party has sought a determination that any law other than Colorado law is applicable to the claims against the United States of America.  Under the Federal Tort Claims Act, "the

law of the place where the act or omission occurred" is, at minimum, a starting point for determining the law applicable to the claims against the United States. 28 U.S.C. § 1346(b)(1). In short, as this case stands currently, Colorado law is applicable to all of Walton and Wightman's claims and to all claims against the United States.

### III. CHOICE OF LAW - STANDARD OF REVIEW

When more than one body of law may be applicable to a claim or issue, a court need not choose which body of law to apply unless there is an outcome determinative conflict between the potentially applicable bodies of law. *United International Holdings, Inc. v. Wharf (Holdings) Limited*, 946 F. Supp 861, 866 (D. Colo. 1996), *citing Eli Lilly & Co. v Home Ins. Co*, 764 F.2d 876, 882 (D.C. Cir. 1985). If there is no outcome determinative conflict in the potentially applicable bodies of law, the law of the forum is applicable. *United International Holdings*, 946 F.Supp. at 866. If a choice of law decision must be made, a federal district court exercising diversity jurisdiction under 28 U.S.C. § 1332 must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Colorado's choice of law standard in tort cases is the "most significant relationship to the occurrence and parties test" expressed in the Restatement (Second) Conflict of Laws, §§ 6, 145, 171. *AE, Inc. v. Goodyear Tire and Rubber Co.*, 168 P.3d 507, 509 - 510 (Colo. 2007).

Section 6(1) of the Restatement provides that a "court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." *Restatement (Second) Conflict of Laws*, § 6(1). When there is no statutory directive, § 6(2) of the Restatement provides a variety of factors to be considered:

3

(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;

(c) the relevant policies of other relative interested states and the interests

of those states in the determination of the particular issue;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability, and uniformity of result; and

(g) ease in determination and application of the law to be applied.

*Restatement (Second) Conflict of Laws*, § 6(2).

Section 145 of the Restatement provides more specific guidance concerning tort

claims:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Restatement (Second) Conflict of Laws*, § 145.

Notably, § 175 of the Restatement provides:

In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to a particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

The choice of law questions at issue here concern the applicability of statutory caps on non-economic damages and the applicability of comparative negligence rules versus rules imposing joint and several liability when the negligence of more than one defendant is found to have caused the plaintiff's injuries. When addressing conflict of laws questions that concern comparative negligence conflicts,

the specific approach to applying the choice of law rule of § 145 should be that the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered, are to be weighed more heavily and are to be given more importance in such a choice of law determination, than the contacts of the place where the injury occurred, and the place where the conduct causing the injury occurred.

***Sabell v. Pacific Intermountain Express Co.***, 536 P.2d 1160, 1166 (Colo. App. 1975).

Finally, the doctrine of depecage is applicable to conflict of law determinations in cases involving multiple issues and multiple parties. Under this doctrine, the rules of different states are applied by focusing a conflict of law determination on the precise issue involved. ***See, e.g., In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979***, 644 F.2d 594, 611 (7th Cir.1981) ("we must examine the choice-of-law rules not with regard to various states' interests in general, but precisely, with regard to each state's interest in the specific question . . . . Thus, we approve the concept of "depecage": the process of applying rules of different states on the basis of the precise issue involved.").

In sum, the Restatement analysis, the analysis applicable under Colorado law,

begins with the presumption that Colorado law will govern. If there is an outcome determinative conflict between Colorado law and another body of law that arguably is applicable, then I must consider the factors outlined above to determine what law is applicable. Any necessary conflict of law determination must be focused on the precise issue involved.

## IV. CLAIMS AGAINST CESSNA

Concerning the claims against Cessna by Iskowitz, Coffman, and Winston, Cessna has demonstrated a potentially outcome determinative conflict of law between the law of the state of Kansas, on the one hand, and the law of the states of Virginia and Illinois on the other hand. The conflict concerns whether or not there is a limit or cap on the amount of non-economic damages available to the plaintiffs. Under Kansas law, recovery of non-economic damages in a wrongful death action is limited to 250,000 dollars per claim. Kan. Stat. Ann. §60-1903(a). The cap "is meant to preclude a jury from awarding an excessive amount of damages out of sympathy to the decedent's family." *See, e.g., Benton v. Union Pac. R. Co.*, 430 F. Supp. 1380, 1385-1386 (D. Kan. 1977). In contrast to the law in Kansas, neither Virginia law nor Illinois law places any cap on non-economic damages in wrongful death claims. Va. Code Ann. § 8.01-52 (2009); *Best v. Taylor Machine Works*, 689 N.E.2d 1057, 1078 (1997) (Illinois statutory cap on non-economic damages in personal injury and wrongful death cases violates Illinois constitution).

Notably, Cessna does not demonstrate in its motion a conflict between Colorado law and the law of Kansas, Virginia, or Illinois. Demonstration of an outcome determinative conflict with the presumptively applicable law of the forum state is the first

step in the conflict of laws analysis.  Similar to Kansas, Colorado law limits the amount of non-economic damages that can be recovered in a wrongful death action.  In most cases, recovery for non-economic damages is limited to 250,000 dollars per claim.  §§13-21-102.5, 13-21-203, C.R.S.  The cap imposed by Colorado law differs from that imposed under Kansas law because the cap in Colorado on non-economic damages is adjusted periodically to account for inflation.  §13-21-102.5, C.R.S.   The Colorado damages limitation "shall be adjusted for inflation as of January 1, 1998, and January 1, 2008. The adjustments made on January 1, 1998, and January 1, 2008, shall be based on the cumulative annual adjustment for inflation for each year since the effective date of the damages limitations" in the relevant Colorado statute.  §13-21-102.5(3)(c), C.R.S.  The court is not aware of, and none of the parties has cited, a similar inflation adjustment provision in Kansas law.

To the extent non-economic damages are at issue in the plaintiffs' claims against Cessna, there is a potentially outcome determinative conflict between Colorado law and Kansas law.  Colorado's inflation adjustment, which has been effective over a period of several years, effectively has raised the amount of Colorado's cap on non-economic damages by a significant amount.  This difference in the amount of the cap potentially is outcome determinative in this case.  In addition, there is a conflict between the law of Colorado and the law of Virginia and Illinois, because Virginia and Illinois to not impose a cap on non-economic damages.  Cessna argues that Kansas law should control the issue of the amount of non-economic damages available to the plaintiffs.  Iskowitz and Coffman, who both are Virgina residents, argue that Virginia law should control their claims for non-economic damages.  Winston, a resident of Illinois, argues that Illinois

law should control her claim for non-economic damages. A determination of what law applies to Iskowitz, Coffman, and Winston's claims for non-economic damages against Cessna requires consideration of the four factors stated in the **Restatement (Second) Conflict of Laws**, § 145. In addition, the more general factors stated in the **Restatement (Second) Conflict of Laws**, § 6 may be considered also. The claims at issue in this case are tort claims, and § 145 of the Restatement is focused on tort claims. Therefore, I address first the § 145 factors.

1. Place of Injury -

The airplane crash in question in this case occurred in Pueblo County, Colorado. Generally, in personal injury or wrongful death actions, the place of injury carries significant weight in the choice of law analysis.

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

**Restatement (Second) Conflict of Laws**, § 145.

In cases involving airplane crashes, however, the importance of the place of injury in the choice of law analysis often is minimized "because courts view the situs of injury as fortuitous." **In re Air Crash Disaster at Stapleton Intern. Airport, Denver, Colo., on Nov. 15, 1987**, 720 F.Supp. 1445, 1452 (D. Colo.1988). "The use of the word 'fortuitous' in air crash cases stands for the proposition that an air crash could occur in any state over which a particular aircraft was scheduled to fly." **Id**. n. 14 (**citing In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979**, 644 F.2d 594, 615 (C.A. Ill.1981)). This case concerns an airplane crash, and Iskowitz, Coffman, Winston, and

Cessna agree that the place of injury is entitled to little or no weight in the choice of law analysis.

    2.  Place of Conduct Causing Injury -

The Cessna aircraft that crashed was designed, manufactured, and first sold in Kansas, where Cessna is headquartered.  Cessna argues that all of Cessna's conduct that allegedly caused the plaintiffs' injuries was undertaken in Kansas.  In their complaints, Iskowitz, Coffman, and Winston each allege that the crash aircraft was designed, manufactured, distributed, and sold with various defects, and that Cessna provided inadequate instructions and warnings about operation of the aircraft in icing conditions.  Generally, the design, manufacture, distribution, and sale of the aircraft took place in Kansas.  Iskowitz and Coffman argue, however, that Cessna's allegedly negligent instruction of the airplane's pilots, via the Aircraft Flight Manual and the Cessna Operations Manual, should be seen as having taken place in Virginia, where the airplane and its pilots were based.

Winston argues also that this factor should be given diminished importance because the Kansas cap on non-economic damages favors Cessna.  Winston cites Comment e to § 145, which says that the "place were the defendant's conduct occurred is of less significance in situations where . . . a potential defendant might choose to conduct his activities in a state whose tort rules are favorable to him."  ***Restatement (Second) Conflict of Laws***, § 145, Comment e.  However, in this case, there is no indication that Cessna chose to locate in Kansas because of the cap in Kansas on non-economic damages.

Assuming, without deciding, that some of Cessna's alleged conduct took place in

Virginia, via Cessna's manuals, I conclude that the vast majority of Cessna's alleged injury causing conduct took place in Kansas. Conceivably, a "potential defendant might choose to conduct his activities in" Kansas because of Kansas's cap on non-economic damages. **Restatement (Second) Conflict of Laws**, § 145, Comment e. Arguably, this consideration reduces the weight to be accorded this factor. In the circumstances of this case, however, this consideration does not reduce the weight to be accorded to this factor by a significant amount. For the purposes of the plaintiffs' claims against Cessna, the Kansas is the place of the conduct allegedly causing the plaintiffs' injuries.

3. Domicil and Residence of the Parties -

Iskowitz and Coffman are Virginia residents. Winston is an Illinois resident. Cessna is a Kansas resident and is headquartered in Kansas. Comment e to § 145 indicates that, under the circumstances of this case, the domicil and residence of the parties carries little weight in the Restatement analysis. The fact that one of the parties "is domiciled or does business in a given state will usually carry little weight of itself." **Restatement (Second) Conflict of Laws**, § 145, Comment e. Residence and place of business of the parties carry greater weight if the residence and place of business of some or all of the parties is grouped in a particular state, and if other relevant factors are tied to the same state. **Id**. In relation to the claims against Cessna, there is no such grouping in this case. Therefore, the residence and domicil of the parties carries little weight in the choice of law analysis.

4. Place of Parties' Relationship -

Iskowitz and Coffman argue that the relationship between Cessna and themselves was centered in Virginia because the decedents whose deaths are the

10

basis for their claims boarded the airplane in Virginia and planned to return to Virginia, and because the airplane was based in Virginia. Iskowitz and Coffman argue that their claims are analogous to the relationship between a passenger and an air carrier, which relationship has been found to be centered where the tickets were purchase and the flight's point of departure or point of return. *In Re Aircrash Disaster at Stapleton Int'l Airport*, 720 F.Supp 1445, 1451 (D. Colo. 1988). I conclude that Cessna is not analogous to an air carrier because Cessna was not providing air transportation services to the plaintiffs. Rather, Cessna designed and manufactured the airplane in question. Winston argues that Cessna and Winston should be seen as having a prior relationship via their mutual relationship with Martinair, Inc. Martinair provided maintenance and pilot services for the airplane at the time of the crash. I conclude that these facts do not demonstrate a relationship between Winston and Cessna. Rather, I conclude that the parties had no relationship prior to the crash. Thus, this factor carries no weight in the choice of law analysis.

     5. Section 6 Factors -

The factors listed in § 6 of the Restatement also provide some guidance under the circumstances of this case. Of the many factors listed in § 6, the factors that carry the greatest importance in tort cases are 1) the needs of the interstate system; 2) the relevant policies of the forum; 3) the relevant policies of other interested states; and 4) ease of determination and application of the law to be applied. *Restatement (Second) Conflict of Laws*, § 145, Comment b. Of these four factors, only the relevant policies of the other interested states is relevant to Cessna's motion. Notably, protection of the justified expectations of the parties and certainty, predictability, and uniformity of result

are of lesser importance in tort cases.  *Id*.  The parties have addressed the policy interests of the interested states and the expectations of the parties, but they have not addressed the other § 6 factors.

Generally, a law that limits a defendant's liability, such as a cap on a certain type of damages, is based on by a policy of protecting defendants from liability or excessive liability.  In general, that is the purpose of the Kansas cap on non-economic damages.  In contrast, tort rules that do not impose a limitation on liability generally are based on a policy of deterring wrongdoers and compensating injured persons.  Virginia follows such a rule. Another relevant policy is the choice of law rules of the interested states.  The choice of law standard in Virginia is that the substantive rights of the parties in a tort action are governed by the law of the place of the wrong. *McMillan v. McMillan*, 253 S.E.2d 662, 663 (Va. 1979); *Dreher v. Budget Rent-A-Car System, Inc.*, 634 S.E.2d 324, 327 (Va. 2006).  Kansas has a similar choice of law rule, although Kansas generally applies the law of the place of the injury.  *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985).  The choice of law rules of Virginia and Kansas reflect a policy of deferring to the law of the place of the wrong or injury in tort cases.

When considering a conflict between a rule that protects an actor from tort liability and a rule that imposes such liability, neither rule is entitled to greater weight based on the policy underlying the rule.  *Restatement (Second) Conflict of Laws*, § 145, Comment c.  In the Restatement analysis, I conclude that this factor weighs in favor of an application of Kansas law.  Virginia has a policy of deference to the law of the place of the wrong in tort cases.  With regard to the plaintiffs' claims against Cessna, that state is Kansas.

6.  Conclusion -

The place of injury carries little weight in this case because, under the Restatement analysis, the place of injury was fortuitous. The place of the alleged conduct causing the injury is entitled to substantial weight, and that place is the state of Kansas.  The domicil and residence of the parties carries little weight in the context of this case, and the place of the parties' relationship carries no weight.  The policies underlying the conflicting rules concerning non-economic damages are, essentially, entitled to equal weight.  Considering all of these factors, I conclude that the place of Cessna's alleged conduct that allegedly caused the plaintiffs' injuries carries greater weight than any of the other factors, considered individually or together.  Thus, I conclude that Kansas has the most significant relationship to the occurrence and the parties and that Kansas law concerning a limit on the amount of non-economic damages is applicable to the plaintiffs' claims against Cessna.

## V.  CLAIMS AGAINST MARTINAIR & CIRCUIT CITY

In their motion [#162], Martinair and Circuit City argue that Colorado law is applicable to the plaintiffs' claims against Martinair and Circuit City.  In response, Iskowitz and Coffman argue that Virginia law is applicable to their claims against Martinair and Circuit City.  Winston argues that Illinois law, as to both liability and damages, should apply to Winston's claims against all defendants. Cessna filed a response to the motion of Martinair and Circuit  in which response Cessna argues that the motion should be granted only insofar as an irreconcilable conflict of law exists with regard to apportionment of damages among the defendants.

The plaintiffs have alleged negligence claims against Martinair, Circuit City, and

Cessna. Martinair and Circuit City argue that none of the parties has shown an outcome-determinative conflict between and among the negligence laws of Colorado, Virginia, Illinois, and Kansas on issues of liability. Addressing Cessna's motion, I noted that Cessna has not demonstrated that there is a conflict of law concerning liability or damages issues, other than the issue of a cap on non-economic damages. I agree that none of the parties has shown an outcome-determinative conflict between and among the applicable negligence laws of Colorado, Virginia, Illinois, and Kansas on issues of liability.

Martinair and Circuit City note that there is a conflict among these four states' laws concerning contributory or comparative negligence of a tort plaintiff but, as a practical matter, that issue is not applicable to the claims of Iskowitz, Coffman, and Winston. The conflict concerning contributory or comparative negligence is not outcome determinative with respect to Iskowitz, Coffman, and Winston's claims because there is no indication that alleged contributory or comparative negligence by these plaintiffs or their decedents is at issue in this case.

Martinair and Circuit City have shown that there is an outcome determinative conflict among the laws of Colorado and Kansas on one hand and the laws of Virginia and Illinois on the other hand, concerning comparative negligence or fault among multiple defendants and concerning joint and several liability among multiple defendants. Colorado and Kansas have enacted comparative negligence or comparative fault statutes and have abolished joint and several liability. §§13-21-111, 13-21-111.5 and 13-21-406, C.R.S.; ***Kennedy v. City of Sawyer***, 618 P.2d 788, 797 (Kan. 1980); KS ST 60-258a. Under both Colorado and Kansas law, a

defendant in a wrongful death action can only be held liable for its respective

share of fault proximately causing the death of a plaintiff's decedent.

On the other hand, under Virginia law, any defendant whose fault was a cause of

the plaintiff's damages is jointly and severally liable for the full amount of the plaintiff's

damages. ***Freeman v. Sproles***, 131 S.E.2d 410, 413-14 (Va. 1963). Under Illinois law,

defendants are jointly and severally liable, with some limitations. 735 ILCS 5/2-1117.

Illinois law may be somewhat unsettled, as the Illinois Supreme Court found in 1997 that

legislation intended to abolish joint and several liability was unconstitutional. ***Best v.***

***Taylor Mach. Works***, 689 N.E.2d 1057, 1084-89 (Ill. 1997).

The present case includes several defendants whose alleged negligence, in

varying forms, allegedly caused the injuries suffered by the plaintiffs. In addition, the

plaintiffs assert a claim for products liability against Cessna. In the context of this case,

it readily is conceivable that more than one of the defendants may be found to have

been negligent and to have caused some portion of the plaintiffs' injuries. There is a

conflict between and among the potentially applicable bodies of law on the issues of

comparative negligence or fault among multiple defendants and joint and several liability

among multiple defendants. In the context of this case, this conflict is likely to be

outcome determinative because it readily is conceivable that more than one of the

defendants may be found to have been negligent and to have caused some portion of

the plaintiffs' injuries. Therefore, I apply the relevant analysis to determine which of the

conflicting laws on these issues will be applied in this case. I consider again the four

factors stated in the ***Restatement (Second) Conflict of Laws***, § 145 and the more

general factors stated in the **Restatement (Second) Conflict of Laws**, § 6.[2]

Notably, it is not feasible or fair to apply a rule of joint and several liability to some claims and defendants, and a comparative fault rule to other claims and defendants. Assuming more than one defendant is found to be at fault in this case, the allocation of liability for any award of damages must be made under one uniform standard. If some claims and defendants are treated under a joint and several liability rule and some claims and defendants are treated under a comparative fault rule, then some defendants may be exposed to monetary liability for damages caused by the negligence of other defendants and some defendants may be exposed to monetary liability only for its own share of any negligence. Such a result would be contrary to the goal of achieving a uniform and consistent application of the law.

1. Place of Injury -

As noted previously, in cases involving airplane crashes, the importance of the place of injury in the choice of law analysis often is minimized "because courts view the situs of injury as fortuitous." **In re Air Crash Disaster at Stapleton Intern. Airport, Denver, Colo., on Nov. 15, 1987**, 720 F.Supp. 1445, 1452 (D. Colo.1988). Martinair and Circuit City argue that the place of injury should be given some weight in this case because the crash occurred when the airplane was approaching to land and the weather at the landing site appears to have affected the airplane. These factors,

_____

[2] Martinair and Circuit City argue in their motion that Colorado law should "govern damages issues with respect to Plaintiffs Iskowitz and Coffman." *Motion* [#162], p. 3. However, they analyze the choice of law question only as to comparative negligence or fault and joint and several liability. *Id.*, p. 10. In their reply [#176], Martinair and Circuit City argue that Colorado's cap on non-economic damages is applicable to the plaintiffs' claims for such damages, and they provide a proposed analysis of the relevant Restatement factors. I decline to resolve this issue based only on argument presented in the reply and without the benefit of argument from the plaintiffs.

16

Martinair and Circuit City argue, tend to tie the airplane to the site of the crash, for the purpose of the Restatement analysis. I conclude that if these considerations give the place of injury any additional weight under § 145, that additional weight is slight at best. The place of injury is entitled to little or no weight in the choice of law analysis.

2. Place of Conduct Causing Injury -

The plaintiffs' claims against Martinar and Circuit City are based primarily on allegations that the pilots who were flying the airplane when it crashed were negligent in piloting the airplane. This alleged conduct took place in Colorado  The plaintiffs allege also that Martinair was negligent because it trained the pilots improperly and inadequately. This alleged conduct took place in Virginia. I conclude that the bulk of the allegedly negligent conduct by Martinair and Circuit City, and the most important aspects of that alleged conduct, took place in Colorado. Thus, Colorado is the place of the conduct causing the injury.

3. Domicil and Residence of the Parties -

Iskowitz and Coffman are Virginia residents. Winston is an Illinois resident. Martinair and Circuit City both are Virginia corporations with their principal places of business in Virginia. Cessna is a Kansas corporation with its principal place of business in Kansas. As discussed above, with regard to the claims against Cessna, generally the fact that one of the parties "is domiciled or does business in a given state will usually carry little weight of itself." **Restatement (Second) Conflict of Laws**, § 145, Comment e. Residence and place of business of the parties carry greater weight if the residence and place of business of some or all of the parties is grouped in a particular state, and if other relevant factors are tied to the same state. **Id**. As to the claims against Martinair

17

and Circuit City, there is a grouping of certain parties and places of business in Virginia. When a comparative negligence rule is in question, as it is here, the residence and place of incorporation of the parties must be weighed more heavily than the place of injury and the place of the conduct causing the injury. ***Sabell v. Pacific Intermountain Express Co.***, 536 P.2d 1160, 1166 (Colo. App. 1975).

In this case, the question at hand concerns four Virginia residents and an Illinois resident. Under the circumstances of this case, this factor weighs in favor of Virginia as to Iskowitz and Coffman. Although Winston is an Illinois resident, I conclude that this factor weighs in favor of Virginia with regard to Winston's claims. With regard to Winston's claims, the ties of the claims and relevant parties to Virginia are stronger than they are to Illinois. Thus, as to the claims of Iskowitz, Coffman, and Winston, this factor weighs in favor of the application of Virginia law.

4. Place of Parties' Relationship -

Iskowitz and Coffman argue that their relationship with Martinair and Circuit City is centered in Virginia. All four of these parties are Virginia residents, the airplane was based in Virginia, departed from Virginia on the day of the crash, and was scheduled to return to Virginia. The decedents of Iskowitz and Coffman both were employed by Circuit City. Winston argues that her decedent's relationship with Circuit City was centered in Illinois and Virginia. As to Winston, this consideration weighs in favor of application of Virginia or Illinois law.

In evaluating this factor, it is important to note that a determination of the applicable rules concerning comparative negligence and joint and several liability is a determination that potentially will have a substantial effect on all of the defendants, not

just Martinair and Circuit City. Notably, Cessna and the FAA have no relationships in Virginia that relate to the parties and claims in this case, yet Cessna and the FAA may well be affected by a rule imposing joint and several liability or comparative fault. As to Iskowitz, Coffman, Martinair, and Circuit City, this factor weighs toward the application of Virginia law. As to the other clams and parties, this consideration carries little weight because the relevant relationships are not focused on any particular place.

5. Section 6 Factors -

As noted previously, the more general factors listed in § 6 of the Restatement also may provide some guidance under the circumstances of this case. Of the many factors listed in § 6, the factors that carry the greatest importance in tort cases are 1) the needs of the interstate system; 2) the relevant policies of the forum; 3) the relevant policies of other interested states; and 4) ease of determination and application of the law to be applied. *Restatement (Second) Conflict of Laws*, § 145, Comment b. Notably, protection of the justified expectations of the parties and certainty, predictability, and uniformity of result are of lesser importance in tort cases. *Id*. In the briefing on the present motion, the § 6 factors cited most prominently are the relevant policies of the forum, the relevant policies of other interested states, and uniformity of result.

The relevant policies of the forum, Colorado, and other interested states, Virginia and Illinois, provide significant guidance in this case. As specified above, both Colorado and Kansas have a statutory policy of allocating negligence or fault among all plaintiffs and defendants in a single action and dictating that any one defendant is liable only for its share of negligence or fault. Virginia and Illinois both impose joint and several

liability for the full amount of the plaintiff's damages, with some limitations in Illinois. As noted above, the choice of law standard in Virginia is that the substantive rights of the parties in a tort action are governed by the law of the place of the wrong. Virginia's choice of law rule reflects a policy of deferring to the law of the place of the wrong in tort cases. With regard to the claims against Martinar and Circuit City, the alleged wrongs took place primarily in Colorado. Considered together, these various policies indicate that Virginia defers to the law of the state where the alleged wrongs took place, and Colorado law allocates negligence or fault rather than to impose joint and several liability. Overall, this factor weighs in favor of the application of Colorado law on the issue of allocation of fault and liability.

Finally, I consider uniformity of result. Generally, conflict of law determinations may result in the application of different rules of different states to particular issues in a case. *See, e.g., In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594, 611 (7th Cir.1981). However, when a case involves multiple defendants and a conflict between different rules concerning allocation of fault among multiple defendants, I conclude that a uniform rule applicable to all defendants is necessary. If some claims and defendants are treated under a joint and several liability rule and some claims and defendants are treated under a comparative fault rule, then some defendants may be exposed to monetary liability for damages caused by the negligence of other defendants and some defendants may be exposed to monetary liability only for their own share of any negligence. The application of different rules on this issue in one case would be both impractical and unfair. This factor requires consideration of all defendants and all claims.

Colorado law will control this issue as to the claims against the United States and Cessna.  Colorado law will control this issue as to all claims asserted by plaintiffs Wightman and Walton.  No party has sought a choice of law determination as to the claims asserted by Wightman and Walton.  Particularly in the context of the other claims and parties in this case, the consideration of uniformity of result, particularly on the key issue of allocation of fault and liability, weighs in favor of the application of Colorado law.

6.  Conclusion -

The place of injury carries little weight in this case because, under the Restatement analysis, the place of injury was fortuitous. The place of the alleged conduct causing the injury is entitled to significant weight, and that place is the state of Colorado.  The domicil and residence of the parties carries substantial weight in the context of this case and, as to this factor, Virginia is the state with the greatest connection to Iskowitz, Coffman, and Winston's claims against Martinair and Circuit City.  In the context of these specific parties and claims, the place of the parties' relationships is primarily Virginia, and this factor weighs also in favor of Virginia.  A consideration of the relevant policies of the forum state and the other interested states weighs in favor of the application of Colorado law.  Finally, uniformity of result is a significant factor in the context of this case.  This factor weighs also in favor of the application of Colorado law.  Considering the claims of Iskowitz, Coffman, and Winston against Martinair and Circuit City, as well as the overall context of this case, I conclude that Colorado has the most significant relationship to the occurrence and the parties and that Colorado law concerning the allocation of fault and liability among the parties is applicable to all claims and parties in this case.

## VI.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Defendant Cessna Aircraft Company's Motion for Determination of State Law Applicable To Claims Against Cessna** [#142] filed December 31, 2009, is **GRANTED** on the terms stated in this order;

2.  That the **Motion of Defendants Martinair, Inc. and Circuit City Stores, Inc. for Determination of State Law Applicable To Claims Against Martinair, Inc. and Circuit City Stores, Inc.** [#162] filed February 12, 2010, is **GRANTED** on the terms stated in this order;

3.  That Kansas law concerning a limit on the amount of non-economic damages **SHALL APPLY** to the claims of the plaintiffs against Cessna; and

4.  That Colorado law concerning the allocation of fault and liability among the parties **SHALL APPLY** to all claims and parties in this case.

Dated August 5, 2010, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge